IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-152

 No. 55A21

 Filed 17 December 2021

 IN THE MATTER OF: K.A.M.A.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 5

 October 2020 by Judge Kimberly Gasperson-Justice in District Court, Henderson

 County. This matter was calendared for argument in the Supreme Court on 6

 December 2021 but determined on the record and briefs without oral argument

 pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

 Susan F. Davis for petitioner-appellee Henderson County Department of Social
 Services.

 Patricia M. Adcroft for appellee Guardian ad Litem.

 David A. Perez for respondent-appellant father.

 NEWBY, Chief Justice.

¶1 Respondent-father appeals from the trial court’s order terminating his

 parental rights to K.A.M.A. (Kenneth).1 After careful review, we affirm.

¶2 Kenneth was born on 16 February 2018 in Henderson County, North Carolina.

 At birth, Kenneth tested positive for cocaine, benzodiazepines, and

 methamphetamines. Kenneth’s mother admitted to drug use during her pregnancy

 1 A pseudonym is used in this opinion to protect the juvenile’s identity and for ease of

 reading.
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 and tested positive at Kenneth’s birth for benzodiazepines, cocaine,

 methamphetamines, and tetrahydrocannabinol (THC). The next day, the Henderson

 County Department of Social Services (DSS) received a report regarding Kenneth.2

 After Kenneth was released from the hospital, he lived with a safety resource family.

 On several dates following Kenneth’s birth, respondent tested positive for cocaine and

 THC. DSS recommended respondent participate in substance abuse treatment, which

 respondent began but did not complete.

¶3 On 21 May 2018, Kenneth was placed with his maternal grandmother, who

 then supervised the parents’ contact with Kenneth. Over Memorial Day weekend that

 year, the parents fought at the maternal grandmother’s home. At one point during

 the altercation, respondent was holding Kenneth in his arms. Eventually, respondent

 pushed Kenneth’s mother on the bed, poked her in the forehead aggressively, and

 grabbed her by the shirt. The maternal grandmother then asked respondent to leave

 the home.

¶4 DSS filed a juvenile petition on 8 June 2018 based on these events. The petition

 alleged Kenneth was a neglected juvenile due to his parents’ issues with substance

 abuse, domestic violence, mental health, and housing instability. The parties then

 2 Though Kenneth was born in Henderson County, the Buncombe County Department

 of Social Services completed the initial family assessment and began in-home services due to
 a conflict of interest at Henderson County DSS. On 1 May 2018, after the conflict of interest
 was resolved, the case was transferred back to Henderson County DSS.
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 consented to a juvenile adjudication order. In that order, entered on 5 July 2018, the

 trial court determined that Kenneth was a neglected juvenile based on the allegations

 in the juvenile petition. The trial court granted custody of Kenneth to DSS, placed

 Kenneth with his maternal grandmother, and stated that DSS “shall explore [the

 maternal grandmother] as a visitation supervisor.” On 16 August 2018, the trial court

 entered an adjudication order and a disposition order reaffirming the findings of fact

 and conclusions of law contained in the consent order. The trial court authorized

 Kenneth’s continued placement with the maternal grandmother because “priority for

 release to such person [is] required.” The trial court also ordered a minimum of one

 hour of weekly supervised visitation and set forth case plan requirements for the

 parents to achieve reunification.

¶5 By 9 October 2018, “conflict between the parents and [the maternal

 grandmother] necessitated [Kenneth]’s removal.” DSS then placed Kenneth with

 foster parents. After the initial review and permanency-planning hearing on 1

 November 2018, the trial court entered an order on 4 January 2019 detailing the

 parents’ recent status. The trial court concluded the parents’ progress was minimal

 and insufficient to remedy the conditions which led to Kenneth’s removal. The trial

 court also considered Kenneth’s release to a relative while DSS maintained custody.

 The trial court noted that it considered the maternal grandmother and respondent’s

 relative as potential placements. Placement with respondent’s relative, however, was
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 inappropriate due to the relative’s criminal and child protective services history.

 Thus, the trial court found that it was “unaware of any such relative willing and able

 to take responsibility for the juvenile.” Nonetheless, it ordered that “DSS shall

 explore for placement any other relatives provided by the parents.” The trial court set

 the primary plan for Kenneth as reunification with the parents and the secondary

 plan as adoption.

¶6 The trial court held a second review and permanency-planning hearing on 27

 June 2019. In an order entered on 23 July 2019, the trial court reiterated the parents’

 case plan requirements and detailed their statuses. The trial court again stated that

 it considered Kenneth’s release to a relative and that it was “unaware of any such

 relative willing and able to take responsibility for the juvenile.” The primary plan

 remained reunification with the parents and the secondary plan remained adoption.

¶7 The trial court held a review and permanency-planning hearing on 21

 November 2019 and 12 December 2019. In an order entered on 15 January 2020, the

 trial court again reiterated the parents’ case plan requirements and detailed their

 progress, which the trial court found to be inconsistent. The trial court noted that

 respondent did not comply with recommended substance abuse treatment, either

 missed drug screens or screened positive for drugs, missed scheduled visitations with

 Kenneth, remained unemployed, and did not have appropriate housing. Additionally,

 the trial court noted that a domestic violence incident occurred between Kenneth’s
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 mother and respondent which resulted in charges against respondent for felony

 assault by strangulation, second-degree kidnapping, and misdemeanor assault on a

 female. The trial court again considered Kenneth’s release to a relative but

 specifically “decline[d] to place [Kenneth] with the maternal grandmother.” Upon the

 recommendations of DSS and the guardian ad litem, the trial court changed the

 primary permanent plan for Kenneth to termination of the parents’ rights followed

 by adoption. The trial court changed the secondary plan to reunification.

¶8 On 18 February 2020, DSS filed a motion to terminate the parents’ rights to

 Kenneth on the grounds of neglect, willful failure to make reasonable progress, and

 willful failure to pay a reasonable portion of the juvenile’s cost of care. See N.C.G.S.

 § 7B-1111(a)(1)–(3) (2019). Before the motion was heard, Kenneth’s maternal

 grandmother sent a letter to the trial court detailing her experience with DSS and

 asking the trial court to place Kenneth with her again. After several continuances,

 the motion was heard on 10 September 2020. On 5 October 2020, the trial court

 entered an order determining that grounds existed to terminate the parents’ rights

 pursuant to N.C.G.S. § 7B-1111(a)(1)–(3). The trial court further concluded that it

 was in Kenneth’s best interests that the parents’ rights be terminated. Accordingly,

 the trial court terminated both parents’ rights. Respondent appeals.3

 3 Kenneth’s mother did not appeal from the trial court’s order terminating her
 parental rights and thus is not a party to this appeal.
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

¶9 A termination of parental rights proceeding consists of an adjudicatory stage

 and a dispositional stage. N.C.G.S. §§ 7B-1109, -1110 (2019); In re Montgomery, 311

 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). Respondent does not challenge the grounds

 for termination adjudicated by the trial court under N.C.G.S. § 7B-1111(a). Rather,

 respondent argues the trial court erred by concluding that terminating his parental

 rights was in Kenneth’s best interests.

¶ 10 “A trial court’s determination concerning whether termination of parental

 rights would be in a juvenile’s best interests ‘is reviewed solely for abuse of

 discretion.’ ” In re S.D.C., 373 N.C. 285, 290, 837 S.E.2d 854, 858 (2020) (quoting In

 re A.U.D., 373 N.C. 3, 6, 832 S.E.2d 698, 700 (2019)). “Under this standard, we defer

 to the trial court’s decision unless it is ‘manifestly unsupported by reason or one so

 arbitrary that it could not have been the result of a reasoned decision.’ ” In re A.K.O.,

 375 N.C. 698, 701, 850 S.E.2d 891, 894 (2020) (quoting In re Z.A.M., 374 N.C. 88, 100,

 839 S.E.2d 792, 800 (2020)). When determining whether termination of a parent’s

 rights is in a child’s best interests,

 [t]he court may consider any evidence, including hearsay
 evidence as defined in [N.C.]G.S. [§] 8C-1, Rule 801, that
 the court finds to be relevant, reliable, and necessary to
 determine the best interests of the juvenile. In each case,
 the court shall consider the following criteria and make
 written findings regarding the following that are relevant:

 (1) The age of the juvenile.

 (2) The likelihood of adoption of the juvenile.
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 (3) Whether the termination of parental rights will
 aid in the accomplishment of the permanent plan for
 the juvenile.

 (4) The bond between the juvenile and the parent.

 (5) The quality of the relationship between the
 juvenile and the proposed adoptive parent,
 guardian, custodian, or other permanent placement.

 (6) Any relevant consideration.

 N.C.G.S. § 7B-1110(a). This Court is “bound by all uncontested dispositional

 findings.” In re E.F., 375 N.C. 88, 91, 846 S.E.2d 630, 632 (2020) (citing In re Z.L.W.,

 372 N.C. 432, 437, 831 S.E.2d 62, 65 (2019)).

¶ 11 During the dispositional stage, the trial court found the following:

 1. The age of the juvenile is two (2) years.

 2. As to the likelihood of the juvenile’s adoption, the
 Court finds as follows: It is very likely that this juvenile
 will be adopted. The juvenile is healthy and is in a foster
 care setting where the foster family is wanting to adopt the
 juvenile.

 3. This Court has previously adopted a permanency
 plan for this juvenile of adoption, and termination of the
 parental rights as ordered herein will aid in the
 accomplishment of this plan.

 ....

 5. As to the bond between the juvenile and
 [respondent], the Court finds as follows: Due to the lack of
 visits, no bond [exists] between [respondent] and the
 juvenile.

 6. As to the relationship between the juvenile and
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 the prospective adoptive parent, the Court finds as follows:
 The bond between the juvenile and the prospective
 adoptive parents are like that of a loving child and the
 child’s parents. The juvenile calls the prospective adoptive
 parents mama and papa.

¶ 12 Respondent does not challenge these dispositional findings. Thus, they are

 binding on appeal. In re A.K.O., 375 N.C. at 702, 850 S.E.2d at 894 (“Dispositional

 findings not challenged by respondents are binding on appeal.”).

¶ 13 Nonetheless, respondent argues the trial court erred by failing to make

 required findings pursuant to N.C.G.S. § 7B-1110(a). Respondent contends the

 maternal grandmother’s letter addressing “a violation of a court order and removal

 of the child from [her care] due to conflict with the parents” created a conflict in the

 evidence. Thus, respondent contends the trial court was required to make written

 findings regarding whether Kenneth’s maternal grandmother was an appropriate

 relative placement.

¶ 14 “Although the trial court must ‘consider’ each of the statutory factors, we have

 construed subsection (a) [of N.C.G.S. § 7B-1110] to require written findings only as

 to those factors for which there is conflicting evidence.” In re E.F., 375 N.C. at 91, 846

 S.E.2d at 633 (citation omitted) (citing In re A.R.A., 373 N.C. 190, 199, 835 S.E.2d

 417, 424 (2019)).

 Although the trial court is not expressly directed to
 consider the availability of a relative placement in the
 course of deciding a termination of parental rights
 proceeding, it may treat the availability of a relative
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 placement as a ‘relevant consideration’ in determining
 whether termination of a parent’s parental rights is in the
 child’s best interests, with the extent to which it is
 appropriate to do so in any particular proceeding being
 dependent upon the extent to which the record contains
 evidence tending to show whether such a relative
 placement is, in fact, available.

 In re S.D.C., 373 N.C. at 290, 837 S.E.2d at 858 (citation omitted). When a party does

 not introduce evidence regarding a potential relative placement at the disposition

 stage, the trial court is not required to consider the relative placement. See In re E.F.,

 375 N.C. at 94, 846 S.E.2d at 634 (“Respondent, however, made no reference to [the

 relative] or any other alternative placement for the children at the disposition stage

 . . . . Absent additional evidence regarding [the relative]’s willingness or ability to

 provide permanence for respondent’s children, the trial court cannot be said to have

 erred . . . .”).

¶ 15 Here there was no conflict in the evidence before the trial court that would

 require findings of fact regarding whether Kenneth’s maternal grandmother was an

 appropriate relative placement. The only testimony before the trial court during the

 adjudication and disposition stages was by Susan Beasley, the DSS social worker

 assigned to Kenneth’s case. Ms. Beasley did not mention a relative placement.

 Further, the maternal grandmother did mail a letter to the trial court expressing her

 desire to have Kenneth placed with her and this letter was included in the record.

 She did not, however, attend or testify at the termination of parental rights hearing,
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

 nor was her letter discussed at the hearing. Moreover, respondent’s attorney did not

 discuss a relative placement during the termination hearing. Rather, the evidence

 showed the trial court previously considered and rejected the maternal grandmother

 as a relative placement. Kenneth was removed from the maternal grandmother’s care

 because “conflict between the parents and [the maternal grandmother] necessitated

 [Kenneth]’s removal.” Then in the final review order—which the trial court

 incorporated into its termination order—the trial court “decline[d] to place [Kenneth]

 with the maternal grandmother.”

¶ 16 Thus, there was no conflict in the evidence regarding whether Kenneth’s

 maternal grandmother was an appropriate relative placement. Rather, the evidence

 shows the trial court had previously considered this option and declined to place

 Kenneth with her. Because there was no conflict in the evidence, the trial court was

 not required to make findings of fact as to this issue. Moreover, the trial court’s

 binding dispositional findings support its conclusion that termination was in

 Kenneth’s best interests. These findings show that Kenneth was placed with a loving

 foster family who wanted to adopt him. Due to respondent’s failure to visit, Kenneth

 had no bond with respondent. Additionally, the trial court found that terminating

 respondent’s parental rights would aid in the accomplishment of Kenneth’s

 permanent plan of adoption by his foster parents, whom he called “mama” and “papa.”

 Therefore, the trial court did not abuse its discretion in determining that termination
 IN RE K.A.M.A.

 2021-NCSC-152

 Opinion of the Court

of respondent’s parental rights was in Kenneth’s best interests. Thus, we affirm the

trial court’s order.

 AFFIRMED.